IN THE MATTER OF THE APPLICATION OF HANK GREENSPUN, ALSO KNOWN AS HERMAN GREENSPUN, FOR A WRIT OF HABEAS CORPUS.

No. 4112

July 21, 1958.                                    328 P.2d 297.

*Springmeyer & Thompson,* of Reno, and *Morton Galane,* of Las Vegas, for Petitioner.

*George G. Holden,* District Attorney, Lander County, and *Ernest S. Brown,* of Reno, for Respondent.

**OPINION**

*Per Curiam:*

This is an original petition in habeas corpus for the petitioner's discharge from confinement. His confinement is upon a charge of the crime commonly known as blackmail. He contends that his commitment is without reasonable or probable cause.

Following preliminary hearing before the justice of the peace of Austin township, Lander County, petitioner was ordered held to answer to the Third judicial district court upon a finding of probable cause to believe him guilty of the crime charged. Our question is whether the evidence presented by the State at the preliminary hearing may be said to have established reasonable or probable cause. If such cause does not exist, petitioner is entitled to discharge on habeas corpus. NRS 34.500(7).

The crime is defined in NRS 205.320. As applied to the facts of this case, the pertinent provisions are as

follows: "Every person who with intent thereby to * * * influence the action of any public officer * * * shall threaten directly or indirectly, (1) to accuse any person of a crime; or * * * (3) to publish or connive at publishing any libel; or (4) to expose or impute to any person any deformity or disgrace; or (5) to expose any secret [shall be guilty of a felony]."

The State charges this petitioner, the publisher of a Las Vegas newspaper, with seeking to influence the action of the Honorable John F. Sexton, district judge of Lander County, in connection with a suit for libel brought against petitioner in Clark County, over the trial of which Judge Sexton was presiding. Trial of the libel suit was had in Clark County and resulted, September 26, 1956, in judgment against petitioner. Subsequently, motions for new trial and for judgment non obstante veredicto were made by petitioner. On December 19, 1956 petitioner sought to disqualify Judge Sexton from ruling on the motions and to secure an order substituting another judge. On December 21, 1956 Judge Sexton refused to disqualify himself and proceeded to deny the motions made by petitioner.

In support of its charge the State at the preliminary hearing presented evidence of acts occurring in Clark County during trial and occurring in Lander County after trial and pending disposition of the posttrial motions, Judge Sexton having returned to his home in Lander County during this period.

We need not discuss the acts petitioner is said to have committed in Clark County. He stands accused of the commission of a crime in Lander County. The gravamen of that crime is a threat, State v. Peters, 37 La.Ann. 730; made for a certain unlawful purpose, Ex Parte Esden, 55 Nev. 169, 28 P.2d 132. The State contends that all of the acts in both counties taken together constitute a single continuing effort to secure favorable judicial action; that the crime may therefore be said to have been committed in either county. This proposition we must reject. In order to establish the commission of the crime,

the continuing effort must have culminated at some point in a threat. Until that point was reached the crime here charged cannot be said to have been committed. There must, then, be reasonable or probable cause for belief that a threat was made directly or indirectly in Lander County.

The occurrences in Lander County resulted from an investigation of Judge Sexton by one Wilbur McNinch, employed by petitioner. The alleged libel which was the subject of the pending suit was the publication in petitioner's newspaper of a story respecting the manner in which the plaintiff had handled the adoption of a baby which characterized the proceedings as a blackmarket sale of the child. The Lander County investigation by McNinch was into the manner in which Judge Sexton had for himself and his wife secured the adoption of a child. It is clear and is conceded that the purpose of the investigation was to secure proof that Judge Sexton himself had followed the practices which petitioner's newspaper had characterized as blackmarket and thus to establish bias on the part of Judge Sexton for the purpose of compelling his disqualification from presiding further over matters connected with the case. The theory of the State is that the occurrences in Lander County constituted an indirect threat to disclose the facts regarding Judge Sexton's adoption unless the judge disqualified himself.

The State relies on two incidents as constituting an indirect threat.

(1) An inquiry by McNinch of the Lander County clerk relative to the procedures followed in the case of the Sexton adoption. Judge Sexton was advised by the clerk of the fact that inquiry had been made. The State regards this inquiry by McNinch as amounting to an intentional threatening communication by him to Judge Sexton of the fact that an investigation was in progress since McNinch must have known that the county clerk would notify the judge of the facts. We do not regard this incident as of any significance. The county clerk's office is a most logical place to make inquiry regarding judicial proceedings. It is therefore difficult to read sinister

implications into the fact that such an inquiry was made. The Judge himself testified at the preliminary hearing (as did his wife) that he had taxed McNinch with being an investigator and that McNinch had flatly denied it. This is entirely inconsistent with any intent on the part of McNinch and petitioner that the Judge have knowledge of the fact that he was being investigated. On the contrary, it would indicate an intent to conceal the fact of investigation.

(2) A conversation between McNinch, the judge, and the judge's wife, in which McNinch, it is contended, disclosed his true motive by stating that every man had his price if pressure were sufficiently applied. The subject was not raised by McNinch, however, but by Mrs. Sexton. She testified: "Mr. [McNinch] was sitting on my left and when there my husband accused him of being an investigator * * * and [he] denied this unequivocally and [he] was saying, well he said if he wanted an investigation made, he said, 'I would hire hoods to do it instead of messing around with it myself,' and I said, 'Well, how does one become so connected that they can speak casually of hoods,' and he said, 'Wherever there is easy money to be made there are hoods around willing to get some of it and to do a dirty job,' and I said, 'Well, then, you think that everybody can be purchased,' and he said, 'Every man has his price.' I said, 'You think everybody can be pressured or bought.' 'Well, let's put it this way,' he said, 'every man can be pressured into doing something if the pressure is brought to bear in the right place.' "

In each instance Mrs. Sexton put the question which required an answer. If an opinion was expressed it was because she had requested it. The opinion, upon the record, would appear to be confined to McNinch's ability to buy the services of a hood. We regard this testimony as wholly insufficient to establish a criminal intent or constitute a threat.

Not only is it difficult to discover an indirect threat from these incidents, but the purpose to which the investigation was subsequently put convincingly establishes that no threat was intended.

If the incidents are to support the charge of blackmail they must add up to an indirect communication from petitioner to Judge Sexton, substantially to the following effect: "Judge Sexton, unless you disqualify yourself in the pending libel suit, I shall expose the unlawful adoption of a child by you and Mrs. Sexton."

Petitioner did not solicit a voluntary withdrawal by Judge Sexton. The first attempt to secure his disqualification occurred December 19, 1956. On that date the facts of the investigation were set forth in affidavits filed in the Clark County court. On the same day petitioner's newspaper featured the filing in a prominent page 1 story. Instead of threatening to expose, petitioner exposed.

The State throughout appears to have disregarded the distinction between a threat to accuse and the accusation itself. Blackmail contemplates the influencing to favorable action through a withholding of disclosure rather than the discrediting of a person through the making of disclosure.

We conclude that there is no reasonable or probable cause to believe that petitioner has committed the crime with which he is charged and for which he has been held to answer.

It is ordered that petitioner be discharged from confinement.